(Slip Opinion) OCTOBER TERM, 2013 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## FIFTH THIRD BANCORP ET AL. *v.* DUDENHOEFFER ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 12–751. Argued April 2, 2014—Decided June 25, 2014

Petitioner Fifth Third Bancorp maintains a defined-contribution retirement savings plan for its employees. Plan participants may direct their contributions into any of a number of investment options, including an "employee stock ownership plan" (ESOP), which invests its funds primarily in Fifth Third stock. Respondents, former Fifth Third employees and ESOP participants, filed this lawsuit against petitioners, Fifth Third and several of its officers who are alleged to be fiduciaries of the ESOP. The complaint alleges that petitioners breached the fiduciary duty of prudence imposed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U. S. C. §1104(a)(1)(B). Specifically, the complaint alleges that petitioners should have known—on the basis of both publicly available information and inside information available to petitioners because they were Fifth Third officers—that Fifth Third stock was overpriced and excessively risky. It further alleges that a prudent fiduciary in petitioners' position would have responded to this information by selling off the ESOP's holdings of Fifth Third stock, refraining from purchasing more Fifth Third stock, or disclosing the negative inside information so that the market could correct the stock's price downward. According to the complaint, petitioners did none of these things, and the price of Fifth Third stock ultimately fell, reducing respondents' retirement savings. The District Court dismissed the complaint for failure to state a claim, but the Sixth Circuit reversed. It concluded that ESOP fiduciaries are entitled to a "presumption of prudence" that does not apply to other ERISA fiduciaries but that the presumption is an evidentiary one and therefore does not apply at the pleading stage. The court went on to hold that the complaint stated a

claim for breach of fiduciary duty.

*Held*:

1. ESOP fiduciaries are not entitled to any special presumption of prudence. Rather, they are subject to the same duty of prudence that applies to ERISA fiduciaries in general, §1104(a)(1)(B), except that they need not diversify the fund's assets, §1104(a)(2). This conclusion follows from the relevant provisions of ERISA. Section 1104(a)(1)(B) "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Massachusetts Mut. Life Ins. Co.* v. *Russell*, 473 U. S. 134, 143, n. 10. Section 1104(a)(1)(C) requires ERISA fiduciaries to diversify plan assets. And §1104(a)(2) establishes the extent to which those duties are loosened in the ESOP context by providing that "the diversification requirement of [§1104(a)(1)(C)] and the prudence requirement (only to the extent that it requires diversification) of [§1104(a)(1)(B)] [are] not violated by acquisition or holding of [employer stock]." Section 1104(a)(2) makes no reference to a special "presumption" in favor of ESOP fiduciaries and does not require plaintiffs to allege that the employer was, *e.g.,* on the "brink of collapse." It simply modifies the duties imposed by §1104(a)(1) in a precisely delineated way. Thus, aside from the fact that ESOP fiduciaries are not liable for losses that result from a failure to diversify, they are subject to the duty of prudence like other ERISA fiduciaries. Pp. 4–15.

2. On remand, the Sixth Circuit should reconsider whether the complaint states a claim by applying the pleading standard as discussed in *Ashcroft* v. *Iqbal*, 556 U. S. 662, 677–680, and *Bell Atlantic Corp.* v. *Twombly*, 550 U. S. 544, 554–563, in light of the following considerations. Pp. 15–20.

(a) Where a stock is publicly traded, allegations that a fiduciary should have recognized on the basis of publicly available information that the market was overvaluing or undervaluing the stock are generally implausible and thus insufficient to state a claim under *Twombly* and *Iqbal*. Pp. 16–18.

(b) To state a claim for breach of the duty of prudence, a complaint must plausibly allege an alternative action that the defendant could have taken, that would have been legal, and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it. Where the complaint alleges that a fiduciary was imprudent in failing to act on the basis of inside information, the analysis is informed by the following points. First, ERISA's duty of prudence never requires a fiduciary to break the law, and so a fiduciary cannot be imprudent for failing to buy or sell stock in violation of the insider trading laws. Second, where a complaint faults fiduciaries for failing to decide, based on negative inside infor-

mation, to refrain from making additional stock purchases or for fail-ing to publicly disclose that information so that the stock would no longer be overvalued, courts should consider the extent to which im-posing an ERISA-based obligation either to refrain from making a planned trade or to disclose inside information to the public could conflict with the complex insider trading and corporate disclosure re-quirements set forth by the federal securities laws or with the objec-tives of those laws.  Third, courts confronted with such claims should consider whether the complaint has plausibly alleged that a prudent fiduciary in the defendant's position could not have concluded that stopping purchases or publicly disclosing negative information would do more harm than good to the fund by causing a drop in the stock price and a concomitant drop in the value of the stock already held by the fund.  Pp. 18–20.

692 F. 3d 410, vacated and remanded.

BREYER, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 12–751

### FIFTH THIRD BANCORP ET AL., PETITIONERS *v.* JOHN DUDENHOEFFER ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[June 25, 2014]

JUSTICE BREYER delivered the opinion of the Court.

The Employee Retirement Income Security Act of 1974
(ERISA), 88 Stat. 829, as amended, 29 U. S. C. §1001 *et
seq.*, requires the fiduciary of a pension plan to act pru-
dently in managing the plan's assets. §1104(a)(1)(B). This
case focuses upon that duty of prudence as applied to the
fiduciary of an "employee stock ownership plan" (ESOP), a
type of pension plan that invests primarily in the stock of
the company that employs the plan participants.

We consider whether, when an ESOP fiduciary's deci-
sion to buy or hold the employer's stock is challenged in
court, the fiduciary is entitled to a defense-friendly stand-
ard that the lower courts have called a "presumption of
prudence." The Courts of Appeals that have considered
the question have held that such a presumption does
apply, with the presumption generally defined as a re-
quirement that the plaintiff make a showing that would
not be required in an ordinary duty-of-prudence case, such
as that the employer was on the brink of collapse.

We hold that no such presumption applies. Instead,
ESOP fiduciaries are subject to the same duty of prudence

that applies to ERISA fiduciaries in general, except that they need not diversify the fund's assets. §1104(a)(2).

## I

Petitioner Fifth Third Bancorp, a large financial services firm, maintains for its employees a defined-contribution retirement savings plan. Employees may choose to contribute a portion of their compensation to the Plan as retirement savings, and Fifth Third provides matching contributions of up to 4% of an employee's compensation. The Plan's assets are invested in 20 separate funds, including mutual funds and an ESOP. Plan participants can allocate their contributions among the funds however they like; Fifth Third's matching contributions, on the other hand, are always invested initially in the ESOP, though the participant can then choose to move them to another fund. The Plan requires the ESOP's funds to be "invested primarily in shares of common stock of Fifth Third." App. 350.

Respondents, who are former Fifth Third employees and ESOP participants, filed this putative class action in Federal District Court in Ohio. They claim that petitioners, Fifth Third and various Fifth Third officers, were fiduciaries of the Plan and violated the duties of loyalty and prudence imposed by ERISA. See §§1109(a), 1132(a)(2). We limit our review to the duty-of-prudence claims.

The complaint alleges that by July 2007, the fiduciaries knew or should have known that Fifth Third's stock was overvalued and excessively risky for two separate reasons. First, publicly available information such as newspaper articles provided early warning signs that subprime lending, which formed a large part of Fifth Third's business, would soon leave creditors high and dry as the housing market collapsed and subprime borrowers became unable to pay off their mortgages. Second, nonpublic information

(which petitioners knew because they were Fifth Third insiders) indicated that Fifth Third officers had deceived the market by making material misstatements about the company's financial prospects. Those misstatements led the market to overvalue Fifth Third stock—the ESOP's primary investment—and so petitioners, using the participants' money, were consequently paying more for that stock than it was worth.

The complaint further alleges that a prudent fiduciary in petitioners' position would have responded to this information in one or more of the following ways: (1) by selling the ESOP's holdings of Fifth Third stock before the value of those holdings declined, (2) by refraining from purchasing any more Fifth Third stock, (3) by canceling the Plan's ESOP option, and (4) by disclosing the inside information so that the market would adjust its valuation of Fifth Third stock downward and the ESOP would no longer be overpaying for it.

Rather than follow any of these courses of action, petitioners continued to hold and buy Fifth Third stock. Then the market crashed, and Fifth Third's stock price fell by 74% between July 2007 and September 2009, when the complaint was filed. Since the ESOP's funds were invested primarily in Fifth Third stock, this fall in price eliminated a large part of the retirement savings that the participants had invested in the ESOP. (The stock has since made a partial recovery to around half of its July 2007 price.)

The District Court dismissed the complaint for failure to state a claim. 757 F. Supp. 2d 753 (SD Ohio 2010). The court began from the premise that where a lawsuit challenges ESOP fiduciaries' investment decisions, "the plan fiduciaries start with a presumption that their 'decision to remain invested in employer securities was reasonable.'" *Id.,* at 758 (quoting *Kuper* v. *Iovenko*, 66 F. 3d 1447, 1459 (CA6 1995)). The court next held that this rule is applica-

ble at the pleading stage and then concluded that the complaint's allegations were insufficient to overcome it. 757 F. Supp. 2d, at 758–759, 760–762.

The Court of Appeals for the Sixth Circuit reversed. 692 F. 3d 410 (2012). Although it agreed that ESOP fiduciaries are entitled to a presumption of prudence, it took the view that the presumption is evidentiary only and therefore does not apply at the pleading stage. *Id.,* at 418–419. Thus, the Sixth Circuit simply asked whether the allegations in the complaint were sufficient to state a claim for breach of fiduciary duty. *Id.,* at 419. It held that they were. *Id.,* at 419–420.

In light of differences among the Courts of Appeals as to the nature of the presumption of prudence applicable to ESOP fiduciaries, we granted the fiduciaries' petition for certiorari. Compare *In re Citigroup ERISA Litigation*, 662 F. 3d 128, 139–140 (CA2 2011) (presumption of prudence applies at the pleading stage and requires the plaintiff to establish that the employer was "in a 'dire situation' that was objectively unforeseeable by the settlor" (quoting *Edgar* v. *Avaya, Inc.*, 503 F. 3d 340, 348 (CA3 2007))), with *Pfeil* v. *State Street Bank & Trust Co.*, 671 F. 3d 585, 592–596 (CA6 2012) (presumption of prudence applies only at summary judgment and beyond and only requires the plaintiff to establish that "'a prudent fiduciary acting under similar circumstances would have made a different investment decision'" (quoting *Kuper*, *supra,* at 1459)).

## II
## A

In applying a "presumption of prudence" that favors ESOP fiduciaries' purchasing or holding of employer stock, the lower courts have sought to reconcile congressional directives that are in some tension with each other. On the one hand, ERISA itself subjects pension plan fiduciaries to a duty of prudence. In a section titled "Fiduciary

duties," it says:

> "(a) **Prudent man standard of care**
>
> "(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> "(A) for the exclusive purpose of:
>
> "(i) providing benefits to participants and their beneficiaries; and
>
> "(ii) defraying reasonable expenses of administering the plan;
>
> "(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>
> "(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
>
> "(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter." §1104.

See also *Central States, Southeast & Southwest Areas Pension Fund* v. *Central Transport, Inc.*, 472 U. S. 559, 570 (1985) (Section 1104(a)(1) imposes "strict standards of trustee conduct . . . derived from the common law of trusts—most prominently, a standard of loyalty and a standard of care").

On the other hand, Congress recognizes that ESOPs are "designed to invest primarily in" the stock of the participants' employer, §1107(d)(6)(A), meaning that they are *not* prudently diversified. And it has written into law its

"interest in encouraging" their use.  One statutory provision says:

> "INTENT OF CONGRESS CONCERNING EMPLOYEE STOCK OWNERSHIP PLANS.—The Congress, in a series of laws [including ERISA] has made clear its interest in encouraging [ESOPs] as a bold and innovative method of strengthening the free private enterprise system which will solve the dual problems of securing capital funds for necessary capital growth and of bringing about stock ownership by all corporate employees.  The Congress is deeply concerned that the objectives sought by this series of laws will be made unattainable by regulations and rulings which treat [ESOPs] as conventional retirement plans, which reduce the freedom of the employee trusts and employers to take the necessary steps to implement the plans, and which otherwise block the establishment and success of these plans."  Tax Reform Act of 1976, §803(h), 90 Stat. 1590.

In addition, and in keeping with this statement of intent, Congress has given ESOP fiduciaries a statutory exemption from some of the duties imposed on ERISA fiduciaries.  ERISA specifically provides that, in the case of ESOPs and other eligible individual account plans,

> "the diversification requirement of [§1104(a)(1)(C)] and the prudence requirement (only to the extent that it requires diversification) of [§1104(a)(1)(B)] [are] not violated by acquisition or holding of [employer stock]."  §1104(a)(2).

Thus, an ESOP fiduciary is not obliged under §1104(a)(1)(C) to "diversif[y] the investments of the plan so as to minimize the risk of large losses" or under §1104(a)(1)(B) to act "with the care, skill, prudence, and diligence" of a "prudent man" insofar as that duty "re-

quires diversification."

## B

Several Courts of Appeals have gone beyond ERISA's express provision that ESOP fiduciaries need not diversify by giving ESOP fiduciaries a "presumption of prudence" when their decisions to hold or buy employer stock are challenged as imprudent. Thus, the Third Circuit has held that "an ESOP fiduciary who invests the [ESOP's] assets in employer stock is entitled to a presumption that it acted consistently with ERISA" in doing so. *Moench* v. *Robertson*, 62 F. 3d 553, 571 (1995). The Ninth Circuit has said that to "overcome the presumption of prudent investment, plaintiffs must . . . make allegations that clearly implicate the company's viability as an ongoing concern or show a precipitous decline in the employer's stock . . . combined with evidence that the company is on the brink of collapse or is undergoing serious mismanagement." *Quan* v. *Computer Sciences Corp.*, 623 F. 3d 870, 882 (2010) (brackets and internal quotation marks omitted). And the Seventh Circuit has described the presumption as requiring plaintiffs to "allege and ultimately prove that the company faced 'impending collapse' or 'dire circumstances' that could not have been foreseen by the founder of the plan." *White* v. *Marshall & Ilsley Corp.*, 714 F. 3d 980, 989 (2013).

The Sixth Circuit agreed that some sort of presumption favoring an ESOP fiduciary's purchase of employer stock is appropriate. But it held that this presumption is an evidentiary rule that does not apply at the pleading stage. It further held that, to overcome the presumption, a plaintiff need not show that the employer was on the "brink of collapse" or the like. Rather, the plaintiff need only show that "'a prudent fiduciary acting under similar circumstances would have made a different investment decision.'" 692 F. 3d, at 418 (quoting *Kuper*, 66 F. 3d, at

1459).

Petitioners argue that the lower courts are right to apply a presumption of prudence, that it should apply from the pleading stage onward, and that the presumption should be strongly in favor of ESOP fiduciaries' purchasing and holding of employer stock.

In particular, petitioners propose a rule that a challenge to an ESOP fiduciary's decision to hold or buy company stock "cannot prevail unless extraordinary circumstances, such as a serious threat to the employer's viability, mean that continued investment would substantially impair the purpose of the plan." Brief for Petitioners 16. In petitioners' view, the "purpose of the plan," in the case of an ESOP, is promoting employee ownership of the employer's stock over the long term. And, petitioners assert, that purpose is "substantially impair[ed]"—rendering continued investment imprudent—only when "a serious threat to the employer's viability" makes it likely that the employer will go out of business. This is because the goal of employee ownership will be substantially impaired only if the employer goes out of business, leaving the employees with no company to own. *Id.,* at 24.

We must decide whether ERISA contains some such presumption.

## III
### A

In our view, the law does not create a special presumption favoring ESOP fiduciaries. Rather, the same standard of prudence applies to all ERISA fiduciaries, including ESOP fiduciaries, except that an ESOP fiduciary is under no duty to diversify the ESOP's holdings. This conclusion follows from the pertinent provisions of ERISA, which are set forth above.

Section 1104(a)(1)(B) "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions

and disposition of assets." *Massachusetts Mut. Life Ins. Co.* v. *Russell*, 473 U. S. 134, 143, n. 10 (1985). Section 1104(a)(1)(C) requires ERISA fiduciaries to diversify plan assets. And §1104(a)(2) establishes the extent to which those duties are loosened in the ESOP context to ensure that employers are permitted and encouraged to offer ESOPs. Section 1104(a)(2) makes no reference to a special "presumption" in favor of ESOP fiduciaries. It does not require plaintiffs to allege that the employer was on the "brink of collapse," under "extraordinary circumstances," or the like. Instead, §1104(a)(2) simply modifies the duties imposed by §1104(a)(1) in a precisely delineated way: It provides that an ESOP fiduciary is exempt from §1104(a)(1)(C)'s diversification requirement and also from §1104(a)(1)(B)'s duty of prudence, but "*only to the extent that it requires diversification.*" §1104(a)(2) (emphasis added).

Thus, ESOP fiduciaries, unlike ERISA fiduciaries generally, are not liable for losses that result from a failure to diversify. But aside from that distinction, because ESOP fiduciaries are ERISA fiduciaries and because §1104(a)(1)(B)'s duty of prudence applies to all ERISA fiduciaries, ESOP fiduciaries are subject to the duty of prudence just as other ERISA fiduciaries are.

### B

Petitioners make several arguments to the contrary. First, petitioners argue that the special purpose of an ESOP—investing participants' savings in the stock of their employer—calls for a presumption that such investments are prudent. Their argument is as follows: ERISA defines the duty of prudence in terms of what a prudent person would do "in the conduct of an enterprise of a like character and with like aims." §1104(a)(1)(B). The "character" and "aims" of an ESOP differ from those of an ordinary retirement investment, such as a diversified mutual

fund.  An ordinary plan seeks (1) to maximize retirement savings for participants while (2) avoiding excessive risk. But an ESOP also seeks (3) to promote employee owner- ship of employer stock.  For instance, Fifth Third's Plan requires the ESOP's assets to be "invested primarily in shares of common stock of Fifth Third." App. 350.  In light of this additional goal, an ESOP fiduciary's decision to buy more shares of employer stock, even if it would be impru- dent were it viewed solely as an attempt to secure finan- cial retirement benefits while avoiding excessive risk, might nonetheless be prudent if understood as an attempt to promote employee ownership of employer stock, a goal that Congress views as important.  See Tax Reform Act of 1976, §803(h), 90 Stat. 1590.  Thus, a claim that an ESOP fiduciary's investment in employer stock was imprudent as a way of securing retirement savings should be viewed unfavorably because, unless the company was about to go out of business, that investment was advancing the addi- tional goal of employee ownership of employer stock.

We cannot accept the claim that underlies this argu- ment, namely, that the content of ERISA's duty of pru- dence varies depending upon the specific nonpecuniary goal set out in an ERISA plan, such as what petitioners claim is the nonpecuniary goal here.  Taken in context, §1104(a)(1)(B)'s reference to "an enterprise of a like char- acter and with like aims" means an enterprise with what the immediately preceding provision calls the "exclusive purpose" to be pursued by all ERISA fiduciaries: "provid- ing benefits to participants and their beneficiaries" while "defraying reasonable expenses of administering the plan." §§1104(a)(1)(A)(i), (ii).  Read in the context of ERISA as a whole, the term "benefits" in the provision just quoted must be understood to refer to the sort of *financial* bene- fits (such as retirement income) that trustees who manage investments typically seek to secure for the trust's benefi- ciaries.  Cf. §1002(2)(A) (defining "employee pension bene-

fit plan" and "pension plan" to mean plans that provide employees with "retirement income" or other "deferral of income"). The term does not cover nonpecuniary benefits like those supposed to arise from employee ownership of employer stock.

Consider the statute's requirement that fiduciaries act "in accordance with the documents and instruments governing the plan *insofar as such documents and instruments are consistent with the provisions of this subchapter*." §1104(a)(1)(D) (emphasis added). This provision makes clear that the duty of prudence trumps the instructions of a plan document, such as an instruction to invest exclusively in employer stock even if financial goals demand the contrary. See also §1110(a) (With irrelevant exceptions, "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility . . . for any . . . duty under this part shall be void as against public policy"). This rule would make little sense if, as petitioners argue, the duty of prudence is defined by the aims of the particular plan as set out in the plan documents, since in that case the duty of prudence could never conflict with a plan document.

Consider also §1104(a)(2), which exempts an ESOP fiduciary from §1104(a)(1)(B)'s duty of prudence but "only to the extent that it requires diversification." What need would there be for this specific provision were the nature of §1104(a)(1)(B)'s duty of prudence altered anyway in the case of an ESOP in light of the ESOP's aim of promoting employee ownership of employer stock? Cf. *Arlington Central School Dist. Bd. of Ed.* v. *Murphy*, 548 U. S. 291, 299, n. 1 (2006) ("[I]t is generally presumed that statutes do not contain surplusage").

Petitioners are right to point out that *Congress*, in seeking to permit and promote ESOPs, was pursuing purposes other than the financial security of plan participants. See, *e.g.,* Tax Reform Act of 1976, §803(h), 90 Stat. 1590 (Con-

gress intended ESOPs to help "secur[e] capital funds for necessary capital growth and . . . brin[g] about stock ownership by all corporate employees"). Congress pursued those purposes by promoting ESOPs with tax incentives. See 26 U. S. C. §§402(e)(4), 404(k), 1042. And it also pursued them by exempting ESOPs from ERISA's diversification requirement, which otherwise would have precluded their creation. 29 U. S. C. §1104(a)(2). But we are not convinced that Congress *also* sought to promote ESOPs by further relaxing the duty of prudence as applied to ESOPs with the sort of presumption proposed by petitioners.

Second, and relatedly, petitioners contend that the duty of prudence should be read in light of the rule under the common law of trusts that "the settlor can reduce or waive the prudent man standard of care by specific language in the trust instrument." G. Bogert & G. Bogert, Law of Trusts and Trustees §541, p. 172 (rev. 2d ed. 1993); see also Restatement (Second) of Trusts §174, Comment *d* (1957) ("By the terms of the trust the requirement of care and skill may be relaxed or modified"). The argument is that, by commanding the ESOP fiduciary to invest primarily in Fifth Third stock, the plan documents waived the duty of prudence to the extent that it comes into conflict with investment in Fifth Third stock—at least unless "extraordinary circumstances" arise that so threaten the goal of employee ownership of Fifth Third stock that the fiduciaries must assume that the settlor would want them to depart from that goal under the common-law "deviation doctrine." See *id.,* §167. This argument fails, however, in light of this Court's holding that, by contrast to the rule at common law, "trust documents cannot excuse trustees from their duties under ERISA." *Central States, Southeast & Southwest Areas Pension Fund*, 472 U. S., at 568; see also 29 U. S. C. §§1104(a)(1)(D), 1110(a).

Third, petitioners argue that subjecting ESOP fiduciar-

ies to a duty of prudence without the protection of a special presumption will lead to conflicts with the legal prohibition on insider trading. The potential for conflict arises because ESOP fiduciaries often are company insiders and because suits against insider fiduciaries frequently allege, as the complaint in this case alleges, that the fiduciaries were imprudent in failing to act on inside information they had about the value of the employer's stock.

This concern is a legitimate one. But an ESOP-specific rule that a fiduciary does not act imprudently in buying or holding company stock unless the company is on the brink of collapse (or the like) is an ill-fitting means of addressing it. While ESOP fiduciaries may be more likely to have insider information about a company that the fund is investing in than are other ERISA fiduciaries, the potential for conflict with the securities laws would be the same for a non-ESOP fiduciary who had relevant inside information about a potential investment. And the potential for conflict is the same for an ESOP fiduciary whose company is on the brink of collapse as for a fiduciary who is invested in a healthier company. (Surely a fiduciary is not obligated to break the insider trading laws even if his company is about to fail.) The potential for conflict therefore does not persuade us to accept a presumption of the sort adopted by the lower courts and proposed by petitioners. We discuss alternative means of dealing with the potential for conflict in Part IV, *infra.*

Finally, petitioners argue that, without some sort of special presumption, the threat of costly duty-of-prudence lawsuits will deter companies from offering ESOPs to their employees, contrary to the stated intent of Congress. Cf. *Massachusetts Mut. Life Ins. Co.*, 473 U. S., at 148, n. 17 ("Congress was concerned lest the cost of federal standards discourage the growth of private pension plans"). ESOP plans instruct their fiduciaries to invest in company stock, and §1104(a)(1)(D) requires fiduciaries to follow

plan documents so long as they do not conflict with ERISA. Thus, in many cases an ESOP fiduciary who fears that continuing to invest in company stock may be imprudent finds himself between a rock and a hard place: If he keeps investing and the stock goes down he may be sued for acting imprudently in violation of §1104(a)(1)(B), but if he stops investing and the stock goes up he may be sued for disobeying the plan documents in violation of §1104(a)(1)(D). See, *e.g., White*, 714 F. 3d, at 987 ("[F]iduciaries could be liable either for the company stock's poor performance if they continue to invest in employer stock, or for missing the opportunity to benefit from good performance if they do not. . . . Such a high exposure to litigation risks in either direction could discourage employers from offering ESOPs, which are favored by Congress"); *Evans* v. *Akers*, 534 F. 3d 65, 68 (CA1 2008) (describing two lawsuits challenging the decisions of a plan's fiduciaries with "diametrically opposed theor[ies] of liability": one arguing that the fiduciaries acted imprudently by continuing to invest in company stock, and the other contending that they acted imprudently by divesting "despite the company's solid potential to emerge from bankruptcy with substantial value for shareholders"). Petitioners argue that, given the threat of such expensive litigation, ESOPs cannot thrive unless their fiduciaries are granted a defense-friendly presumption.

Petitioners are basically seeking relief from what they believe are meritless, economically burdensome lawsuits. We agree that Congress sought to encourage the creation of ESOPs. And we have recognized that "ERISA represents a '"careful balancing" between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans.'" *Conkright* v. *Frommert*, 559 U. S. 506, 517 (2010) (quoting *Aetna Health Inc.* v. *Davila*, 542 U. S. 200, 215 (2004)); see also *Varity Corp.* v. *Howe*, 516 U. S. 489, 497 (1996) (In "inter-

pret[ing] ERISA's fiduciary duties," "courts may have to take account of competing congressional purposes, such as Congress' desire to offer employees enhanced protection for their benefits, on the one hand, and, on the other, its desire not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place").

At the same time, we do not believe that the presumption at issue here is an appropriate way to weed out meritless lawsuits or to provide the requisite "balancing." The proposed presumption makes it impossible for a plaintiff to state a duty-of-prudence claim, no matter how meritorious, unless the employer is in very bad economic circumstances. Such a rule does not readily divide the plausible sheep from the meritless goats. That important task can be better accomplished through careful, context-sensitive scrutiny of a complaint's allegations. We consequently stand by our conclusion that the law does not create a special presumption of prudence for ESOP fiduciaries.

IV

We consider more fully one important mechanism for weeding out meritless claims, the motion to dismiss for failure to state a claim. That mechanism, which gave rise to the lower court decisions at issue here, requires careful judicial consideration of whether the complaint states a claim that the defendant has acted imprudently. See Fed. Rule Civ. Proc. 12(b)(6); *Ashcroft* v. *Iqbal*, 556 U. S. 662, 677–680 (2009); *Bell Atlantic Corp.* v. *Twombly*, 550 U. S. 544, 554–563 (2007). Because the content of the duty of prudence turns on "the circumstances . . . prevailing" at the time the fiduciary acts, §1104(a)(1)(B), the appropriate inquiry will necessarily be context specific.

The District Court in this case granted petitioners' motion to dismiss the complaint because it held that re-

spondents could not overcome the presumption of prudence. The Court of Appeals, by contrast, concluded that no presumption applied. And we agree with that conclusion. The Court of Appeals, however, went on to hold that respondents had stated a plausible duty-of-prudence claim. 692 F. 3d, at 419–420. The arguments made here, along with our review of the record, convince us that the judgment of the Court of Appeals should be vacated and the case remanded. On remand, the Court of Appeals should apply the pleading standard as discussed in *Twombly* and *Iqbal* in light of the following considerations.

### A

Respondents allege that, as of July 2007, petitioners knew or should have known in light of publicly available information, such as newspaper articles, that continuing to hold and purchase Fifth Third stock was imprudent. App. 48–53. The complaint alleges, among other things, that petitioners "continued to allow the Plan's investment in Fifth Third Stock even during the time that the stock price was declining in value as a result of [the] collapse of the housing market" and that "[a] prudent fiduciary facing similar circumstances would not have stood idly by as the Plan's assets were decimated." *Id.,* at 53.

In our view, where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances. Many investors take the view that "'they have little hope of outperforming the market in the long run based solely on their analysis of publicly available information,'" and accordingly they "'rely on the security's market price as an unbiased assessment of the security's value in light of all public information.'" *Halliburton Co.* v. *Erica P. John Fund, Inc.* ___ U. S. ___, ___ (2014) (slip op., at 11–12)

(quoting *Amgen Inc.* v. *Connecticut Retirement Plans and Trust Funds*, 568 U. S. \_\_\_, \_\_\_ (2013) (slip op., at 5)). ERISA fiduciaries, who likewise could reasonably see "little hope of outperforming the market . . . based solely on their analysis of publicly available information," *ibid.*, may, as a general matter, likewise prudently rely on the market price.

In other words, a fiduciary usually "is not imprudent to assume that a major stock market . . . provides the best estimate of the value of the stocks traded on it that is available to him." *Summers* v. *State Street Bank & Trust Co.*, 453 F. 3d 404, 408 (CA7 2006); see also *White*, 714 F. 3d, at 992 (A fiduciary's "fail[ure] to outsmart a presumptively efficient market . . . is . . . not a sound basis for imposing liability"); cf. *Quan*, 623 F. 3d, at 881 ("Fiduciaries are not expected to predict the future of the company stock's performance").

We do not here consider whether a plaintiff could nonetheless plausibly allege imprudence on the basis of publicly available information by pointing to a special circumstance affecting the reliability of the market price as "'an unbiased assessment of the security's value in light of all public information,'" *Halliburton Co.*, *supra,* at \_\_\_ (slip op., at 12) (quoting *Amgen Inc.*, *supra,* at \_\_\_ (slip op., at 5)), that would make reliance on the market's valuation imprudent. In this case, the Court of Appeals held that the complaint stated a claim because respondents "allege that Fifth Third engaged in lending practices that were equivalent to participation in the subprime lending market, that Defendants were aware of the risks of such investments by the start of the class period, and that such risks made Fifth Third stock an imprudent investment." 692 F. 3d, at 419–420. The Court of Appeals did not point to any special circumstance rendering reliance on the market price imprudent. The court's decision to deny dismissal therefore appears to have been based on an

erroneous understanding of the prudence of relying on market prices.

## B

Respondents also claim that petitioners behaved imprudently by failing to act on the basis of *nonpublic* information that was available to them because they were Fifth Third insiders. In particular, the complaint alleges that petitioners had inside information indicating that the market was overvaluing Fifth Third stock and that they could have used this information to prevent losses to the fund by (1) selling the ESOP's holdings of Fifth Third stock; (2) refraining from future stock purchases (including by removing the Plan's ESOP option altogether); or (3) publicly disclosing the inside information so that the market would correct the stock price downward, with the result that the ESOP could continue to buy Fifth Third stock without paying an inflated price for it. See App. 17, 88–89, 113.

To state a claim for breach of the duty of prudence on the basis of inside information, a plaintiff must plausibly allege an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it. The following three points inform the requisite analysis.

First, in deciding whether the complaint states a claim upon which relief can be granted, courts must bear in mind that the duty of prudence, under ERISA as under the common law of trusts, does not require a fiduciary to break the law. Cf. Restatement (Second) of Trusts §166, Comment *a* ("The trustee is not under a duty to the beneficiary to do an act which is criminal or tortious"). Federal securities laws "are violated when a corporate insider trades in the securities of his corporation on the basis of

material, nonpublic information." *United States* v. *O'Hagan*, 521 U. S. 642, 651–652 (1997). As every Court of Appeals to address the question has held, ERISA's duty of prudence cannot require an ESOP fiduciary to perform an action—such as divesting the fund's holdings of the employer's stock on the basis of inside information—that would violate the securities laws. See, *e.g., Rinehart* v. *Akers*, 722 F. 3d 137, 146–147 (CA2 2013); *Kirschbaum* v. *Reliant Energy, Inc.*, 526 F. 3d 243, 256 (CA5 2008); *White*, *supra,* at 992; *Quan*, *supra,* at 881–882, and n. 8; *Lanfear* v. *Home Depot, Inc.*, 679 F. 3d 1267, 1282 (CA11 2012). To the extent that the Sixth Circuit denied dismissal based on the theory that the duty of prudence required petitioners to sell the ESOP's holdings of Fifth Third stock, its denial of dismissal was erroneous.

Second, where a complaint faults fiduciaries for failing to decide, on the basis of the inside information, to refrain from making additional stock purchases or for failing to disclose that information to the public so that the stock would no longer be overvalued, additional considerations arise. The courts should consider the extent to which an ERISA-based obligation either to refrain on the basis of inside information from making a planned trade or to disclose inside information to the public could conflict with the complex insider trading and corporate disclosure requirements imposed by the federal securities laws or with the objectives of those laws. Cf. 29 U. S. C. §1144(d) ("Nothing in this subchapter [which includes §1104] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law"); *Black & Decker Disability Plan* v. *Nord*, 538 U. S. 822, 831 (2003) ("Although Congress 'expect[ed]' courts would develop 'a federal common law of rights and obligations under ERISA-regulated plans,' the scope of permissible judicial innovation is narrower in areas where other federal actors are

engaged" (quoting *Pilot Life Ins. Co.* v. *Dedeaux*, 481 U. S. 41, 56 (1987); citation omitted)); *Varity Corp.*, 516 U. S., at 506 (reserving the question "whether ERISA fiduciaries have any fiduciary duty to disclose truthful information on their own initiative, or in response to employee inquiries"). The U. S. Securities and Exchange Commission has not advised us of its views on these matters, and we believe those views may well be relevant.

Third, lower courts faced with such claims should also consider whether the complaint has plausibly alleged that a prudent fiduciary in the defendant's position could not have concluded that stopping purchases—which the market might take as a sign that insider fiduciaries viewed the employer's stock as a bad investment—or publicly disclosing negative information would do more harm than good to the fund by causing a drop in the stock price and a concomitant drop in the value of the stock already held by the fund.

*      *      *

We leave it to the courts below to apply the foregoing to the complaint in this case in the first instance. The judgment of the Court of Appeals for the Sixth Circuit is vacated and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*